UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE HILL, an individual, and ARIEL EPSTEIN POLLACK, an individual, | No. 2:17-cv-1604 WBS DB |
| Plaintiffs, | |
| v. | |
| JETBLUE AIRWAYS CORPORATION, a Delaware corporation, | |
| Defendant. | |
| ERICKA BOHNEL, an individual, and ROSA MARTINEZ, an individual, | No. 2:18-cv-0081 WBS DB |
| Plaintiffs, | |
| | ORDER |
| v. | |
| JETBLUE AIRWAYS CORPORATION, a Delaware corporation, | |
| Defendant. | |

On July 23, 2021, this matter came before the undersigned pursuant to Local Rule 302(c)(1) for hearing of defendant's motion for discovery. Attorneys Rachel Luke and Glenn Guenard appeared via Zoom on behalf of the plaintiffs. Attorney Ashley Shively appeared via

1

Zoom on behalf of the defendant. Oral argument was heard and the motions were taken under submission. The parties' dispute concerns two issues: (1) plaintiffs' Rule 35 examinations; and (2) plaintiffs' disclosures with respect to the calculation of damages.

## I.      Plaintiffs' Rule 35 Examinations

The court may order a Rule 35 Independent Medical Examination "only on motion for good cause" and that motion must "specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2)(A)-(B). Here, the parties do not dispute the propriety of the Rule 35 examinations and each side has submitted a proposed order with respect to those examinations. (ECF Nos. 80-2 & 80-3.[1]) Plaintiff, however, has made three requests with respect to the examinations.

### A.      Third Party and Audio Recording

Plaintiffs request the presence of a third party—a licensed nurse—during the examinations for emotional support as well as an audio recording of the examinations. Whether to "either allow a tape recorder or a third person at the examination of plaintiff raises only a single issue" and depends on the facts of each case. Hertenstein v. Kimberly Home Health Care, Inc., 189 F.R.D. 620, 628-30 (D. Kan. 1999).

"Three general reasons may argue the presence of a third person or recording device at a Fed. R. Civ. P. 35(a) examination: (1) fear that the examiner, as a person retained by an opponent, will improperly conduct the examination to obtain admissions or other damaging concessions from the examinee; (2) fear that the examiner will utilize improper, unconventional, or harmful examination techniques; and (3) a need for emotional support or comfort during the examination." Id. at 630.

Here, plaintiffs assert that they "have a demonstrated need for emotional support" because "they will be describing past trauma associated with the JetBlue Flight 429 severe turbulence event." (JS (ECF No. 80-1) at 7.) "While federal courts in some instances have permitted an observer in a Rule 35 examination, '[t]he majority rule adopted by the federal courts is that the

---

[1] For purposes of clarity and simplicity, the citation here and throughout is to the docket in Hill, No. 2:17-cv-1604 WBS DB.

court may, and often should, exclude third-party observers, including counsel, from medical or psychiatric evaluations.'" Flack v. Nutribullet, L.L.C., 333 F.R.D. 508, 517 (C.D. Cal. 2019); see also Hertenstein, 189 F.R.D. at 631 (finding "no right to the presence of any third person or mechanical recording device at the examination" and that "the presence of a mechanical recording device inappropriate under the facts of this case"); Shirsat v. Mutual Pharmaceutical Co., Inc., 169 F.R.D. 68, 70 (E.D. Pa. 1996) ("This Court finds that an observer, court reporter, or recording device, would constitute a distraction during the examination and work to diminish the accuracy of the process."); Ragge v. MCA/Universal Studios, 165 F.R.D. 605, 609-10 (C.D. Cal. 1995) ("Third party observers may, regardless of their good intentions, contaminate a mental examination.").

While the undersigned is cognizant of the challenges inherent in a Rule 35 examination, plaintiffs have failed to make a showing as to why any plaintiff—let alone all plaintiffs—require emotional support during these examinations or why these examinations should be recorded. Moreover, "[e]ven where legitimate concerns exist, many courts have emphasized that there are 'other, less drastic means of addressing them,' including the provision of a Rule 35 examination report to the plaintiff for review; the opportunity for plaintiff to depose the physician, cross-examine the physician at trial, and introduce contrary expert evidence; and the opportunity to seek exclusion of evidence improperly obtained during the examination from trial.'" Flack, 333 F.R.D. at 518 (quoting Smoloko v. Unimark Lowby Trans., LLC. 327 F.R.D. 59, 63 (M.D. Penn. 2018)).

Accordingly, plaintiffs' request will not be granted.

**B.  Duration of Plaintiffs' Examinations**

The parties disagree as how much time should be allowed for each examination. (See ECF No. 80-1 at 9; ECF No. 80-2 at 3; ECF No. 80-3 at 3, 7, 11.) The undersigned is cautious of the fact that "imposing arbitrary time limits on the examinations would create more problems than it would alleviate." Nazar v. Harbor Freight Tools USA Inc., No 2:18-cv-0348 SMJ, 2020 WL 4730973, at *4 (E.D. Wash. Mar. 13, 2020); see also Lahr v. Fulbright & Jaworski, L.L.P., 164 F.R.D. 196, 202 (N.D. Tex. 1995) ("For the court to intervene and limit the type of

examination an expert has indicated is necessary in order to analyze plaintiff's claims would subvert the truth finding function inherent in Rule 35 examinations.").

That said, as acknowledged at the July 23, 2021 hearing, defendant is requesting up to 14 hours of examination for each plaintiff. In order to guard against fatigue, the undersigned will order that each plaintiff be examined over a two-day period, with each day allowing for 2, four-hour examinations (e.g., Monday 8 am to 12pm, & 1 pm to 5 pm, Tuesday 8 am to 12 pm & 1 pm to 5 pm), with no less than a one-hour break between examination periods. The parties, however, are free to amend this schedule pursuant to their agreement. See Halliday v. Spjute, No. 1:07-cv-0620 AWI GSA, 2015 WL 3988903, at *3 (E.D. Cal. June 30, 2015) ("Given Plaintiffs' concerns about mental and emotional fatigue, however, the Court will permit each examination to occur over a two day period. Each examination will consist of two, four hour testing sessions. This schedule adequately protects Defendants' need for discovery and Plaintiffs' concerns of mental fatigue.").

### C. Location of Plaintiff Ariel Pollack's Examination

After the events at issue in this action plaintiff Ariel Pollack moved from California to Tennessee. (JS (ECF No. 80-1) at 12.) Due to her "extreme fear of flying" plaintiff Pollack requests that the defendant reimburse plaintiff for the travel expenses of both plaintiff "and her mother to accompany her to provide comfort." (Id.)

"The general rule with respect to the location of depositions is that the plaintiff must produce its witnesses in the district in which the plaintiff instituted the action, unless the plaintiff has shown financial hardship or inability to attend the deposition in that district." Aerocrine AB v. Apieron Inc., 267 F.R.D. 105, 108 (D. Del. 2010) (quotation omitted); see also In re Outsidewall Tire Litigation, 267 F.R.D. 466, 471 (E.D. Va. 2010) ("courts ordinarily presume that a plaintiff may be deposed in the judicial district where the action was brought, inasmuch as the plaintiff, in selecting the forum, has effectively consented to participation in legal proceedings there"); South Seas Catamaran, Inc. v. Motor Vessel Leeway, 120 F.R.D. 17, 21 (D. N.J. 1988) ("the general rule requiring plaintiff or its agents to appear for the taking of depositions in the district in which the suit is brought").

Again, the undersigned is cognizant of the difficulties plaintiff Pollack may encounter in appearing for the Rule 35 examinations. However, plaintiff chose to bring this action knowing it would be in this district. Moreover, even after the events at issue plaintiff Pollack has flown "on occasion," including to visit family in Maine and in Portland. (JS (ECF No. 80-1) at 12.) While plaintiff Pollack is free to take any steps necessary to arrive safely and timely for the examinations as seen fit the undersigned finds that plaintiffs have not justified an order requiring defendant to reimburse plaintiff Pollack for such costs.

Plaintiffs' request, therefore, will not be granted.

## II.     Plaintiffs' Computation of Damages

According to defendant plaintiffs have not provided "even so much as an estimate of general damages for each Plaintiff," but "merely state that the 'exact amount and categories of general damages are currently unknown but will be proven at the time of trial.'" (JS (ECF No. 80-1) at 13.) Counsel for plaintiffs acknowledged at the July 23, 2021 hearing that plaintiffs are seeking general and special damages.

"The initial disclosure requirement does contemplate 'some analysis' and requires more than merely setting forth the amount demanded." Ritchie v. Sempra Energy, CASE NO. 10cv1513 CAB(KSC), 2014 WL 12637955, at *6 (S.D. Cal. Aug. 4, 2014). Plaintiffs counsel asserted at the July 23, 2021 hearing that it is difficult to calculate plaintiffs' general damages at this stage of the action. While that may be true, plaintiffs "should provide [an] assessment of damages in light of the information currently available . . . so as to enable [defendant] to understand the contours of its potential exposure and make informed decisions as to settlement and discovery." City and County of San Francisco v. Tutor-Saliba Corp., 218 F.R.D. 219, 221 (N.D. Cal. 2003).

Nonetheless, as stated by plaintiffs' counsel at the July 23, 2021 hearing, it does not appear that either side provided a copy of plaintiffs' disclosure with respect to damages. Thus, the undersigned cannot say with certainty whether plaintiffs' disclosure was insufficient. Accordingly, the plaintiffs shall reconsider their disclosure in light of this analysis and determine whether a supplemental disclosure is warranted. See Design Strategy, Inc. v. Davis, 469 F.3d

284, 295 (2nd Cir. 2006) ("by its very terms Rule 26(a) requires more than providing—without any explanation—undifferentiated financial statements; it requires a 'computation,' supported by documents"); Agence France Presse v. Morel, 293 F.R.D. 682, 685 (S.D. N.Y. 2013) ("Put simply, damages computations and the documents supporting those computations are two different things, and Rule 26 obliges parties to disclose and update the former as well as the latter."); Frontline Medical Associates, Inc. v. Coventry Health Care, 263 F.R.D. 567, 569 (C.D. Cal. 2009) ("Plaintiff's initial disclosure, therefore, should disclose a computation of each category of damages attributable to each cause of action."); Burrell v. Crown Cent. Petroleum, Inc., 177 F.R.D. 376, 386 (E.D. Tex. 1997) ("Any further compensatory damages not related to the issue of mental anguish must be reasonably calculated and disclosed to Crown, however.").

If a dispute remains, the parties shall meet and confer over the issue.

## CONCLUSION

Upon consideration of the arguments on file and those made at the hearing, and for the reasons set forth on the record at that hearing and above, IT IS HEREBY ORDERED that:

1. Defendant's motions for discovery (Hill ECF No. 80 & Bohnel ECF No. 76) are granted in part and denied in part as stated above; and

2. Defendant JetBlue's examinations of plaintiffs pursuant to Rule 35 of the Federal Rules of Civil Procedure shall be conducted as follows:

The examining providers will be Dr. Peter Sfakianos (an orthopedist) and Dr. Steven Mcintire (a neurologist), a neuropsychologist to be determined, and any other physicians reasonably disclosed by JetBlue in accordance with the expert discovery schedule. The exams will take place as noticed, with reasonable accommodations as to date and time based on plaintiffs' availability. If plaintiffs fail to appear at the exam, as noticed and as agreed, or if plaintiffs or their agents or representatives interfere in the exam in any way, plaintiffs will be invoiced for the full amount of the exam, and will be subject to any other penalty or sanction as ordered by the court.

The exams for each plaintiff may take place over a two-day period, with each day allowing for 2, four-hour examinations (e.g., Monday 8 am to 12pm, & 1 pm to 5 pm, Tuesday 8 am to 12 pm & 1 pm to 5 pm), with no less than a one-hour break between examination periods. The parties,

however, are free to amend this schedule pursuant to their agreement. The estimated length of time for the exams is at the discretion of the physician. The orthopedic and neurology exams are not expected to last more than three hours each and neuropsychological exams no more than eight hours.

The providers shall conduct exams in the areas of orthopedics, neurology (as to plaintiff Pollack only), and neuropsychology. The providers will not inquire into privileged attorney-client communications, and any inadvertent disclosure of such communications by plaintiffs will not be admissible and will not constitute waiver of the attorney-client privilege.

The providers will be entitled to ask reasonable questions to facilitate the exam and as necessary to complete their reports, including, but not limited to, as it relates to the underlying incident, and plaintiffs' medical history, treatment, and underlying/pre-existing conditions. The physicians disclosed by JetBlue will adhere to applicable professional and ethical principles and code of conduct.

Neither plaintiffs nor JetBlue will have an observer present during the exam. Neither plaintiffs nor JetBlue will interfere, impede or delay the exam in any way. In the event that any problems arise during the exam, the providers will contact counsel in an effort to promptly resolve any disputes. Reports of the examinations will be dealt with in accordance with the provisions of Rule 35 of the Federal Rules of Civil Procedure or as ordered by the court.

If plaintiffs' take the deposition of the providers, the depositions will be conducted remotely pursuant to the parties' agreed-upon protocol, and plaintiffs will be invoiced at the hourly rate, or deposition-flat fee rate, as the case may be, of each provider in accordance with his/her respective fee schedules. Plaintiffs and their counsel only should contact the providers through counsel for JetBlue. Counsel for JetBlue will inform the providers of the terms of this order.

Dated: July 27, 2021

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB/orders/orders.civil/hill1604.oah.072321